UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARIA DE LOURDES CINTRON
RAMIEREZ,

       Plaintiff,

       v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

17-CV-1064
DECISION AND ORDER

---

On October 23, 2017, the plaintiff, Maria De Lourdes Cintron Ramirez, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On August 27, 2018, Ramirez moved for judgment on the pleadings, Docket Item 11, and on October 25, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15. On November 19, 2018, Ramirez replied. Docket Item 16.

For the reasons stated below, this Court denies Ramirez's motion and grants the Commissioner's cross-motion.

## **BACKGROUND**

### I.    PROCEDURAL HISTORY

On December 5, 2013, Ramirez applied for Supplemental Security Income benefits ("SSI"). Tr. 89. She claimed that she had been disabled since October 26,

2008, due to asthma, diabetes, depression, back problems, and right forearm ligament damage.  *Id.*

On June 12, 2014, Ramirez received notice that her application was denied because she was not disabled under the Act.  Tr. 109-12.  She requested a hearing before an administrative law judge ("ALJ"), *id.* at 145, which was held on December 19, 2016, Tr. 51.  The ALJ then issued a decision on March 22, 2017, confirming the finding that Ramirez was not disabled.  Tr. 33.  Ramirez appealed the ALJ's decision, but her appeal was denied, and the decision then became final.  Tr. 1-4.  On October 23, 2017, Ramirez filed this action, asking this Court to review the ALJ's decision.  Docket Item 1.

## II.  RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Ramirez's objection.  Ramirez was examined by several different providers, but only four—Michael Slater, D.O., a family medicine physician; Kimberly A. Wilson, a nurse practitioner in Dr. Slater's office; Samuel Balderman, M.D., a thoracic surgeon; and Susan Santarpia, Ph.D., a psychologist—are of most significance to Ramirez's claim of disability before this Court.

### A.  Michael Slater, D.O., Family Medicine Physician

Dr. Slater is Ramierez's treating physician.  She sees him about every four months.  Tr. 315.  On August 12, 2014, Dr. Slater completed a written evaluation of Ramierez, finding that she suffers from anxiety, asthma, chronic pain, and dizziness.  Tr. 313.  Each of these conditions is permanent.  *Id.*

Dr. Slater concluded that Ramierez is moderately limited in her ability see, hear, speak, and use her hands.  Tr. 314.  He also found that Ramierez is very limited in her

2

ability to walk, stand, sit, lift, carry, push, pull, bend, and climb stairs. *Id.* Although Dr. Slater indicated that Ramierez is moderately limited in her ability to maintain attention and concentration, he said that he has seen no evidence of any other limitations stemming from mental impairments. *Id.* Based on all these functional limitations, Dr. Slater found that Ramierez appears to be very limited in her ability to function in a work setting at a consistent pace. *Id.*

According to Dr. Slater, Ramierez "cannot work" and has "multiple chronic medical problems." *Id.* Ramierez has "pain throughout her body." Tr. 315. She "cannot stand and/or sit upright for six to eight hours . . . due to pain." Tr. 316. Her condition "require[s her] to lie down during the day." *Id.* She can walk only about fifty feet without stopping. *Id.* She is rarely able to reach, carefully handle objects, or handle with her fingers. *Id.* She can lift only five pounds. *Id.*

Dr. Slater found that Ramierez's claims regarding her pain are credible and that there is an objective medical reason for the pain. Tr. 317. Although Dr. Slater determined that Ramierez cannot continue or resume work at her current or previous employment "due to her chronic pain and asthma," he explicitly said that there may be other work Ramierez could do given her skills and disability or impairment. *Id.*

### B. Kimberly A. Wilson, Nurse Practitioner

On August 2, 2014, Nurse Practitioner Wilson, who works in Dr. Slater's office, completed a written evaluation of Ramierez. Tr. 237-41. NP Wilson indicated that Ramierez suffers from diabetes, depression, asthma, and a vitamin D deficiency. Tr. 237. Her symptoms include glucose fluctuations, occasional shortness of breath,

3

sadness, and fatigue.  *Id.*  All her diagnoses were made as of Ramirez's first visit in December 2013.  Tr. 238.

NP Wilson indicated that Ramirez need not "rest before . . . she can engage in activities" because she "should improve with medicinal treatment in progress."  Tr. 239.  At the same time, however, NP Wilson explained that Ramirez's "[p]hysical limitations include lifting" no more than fifteen pounds.  Tr. 240.  She can *occasionally* (up to 1/3 of a work day) lift less than fifteen pounds.  *Id.*  She is able to stand or walk "up to 6 hours per day."  *Id.*  She also can sit "up to 6 hours per day."  *Id.*  According to NP Wilson, Ramirez has "[n]o limitation" when it comes to her ability to push or pull.  *Id.*  NP Wilson also noted that Ramierez has no "[o]ther" limitation, such as "postural, manipulative, visual, communicative, [or] environmental."  *Id.*

### C. Samuel Balderman, M.D., Thoracic Surgeon

On April 3, 2014, Dr. Balderman saw Ramirez for a consultative examination.  Tr. 250-53.  Dr. Balderman diagnosed Ramirez with hypertension, diabetes, lumbar spine pain, and asthma.  Tr. 52.  He indicated that Ramirez "has mild limitations with repetitive bending and lifting."  Tr. 253.  He also said that "[c]oncerning her frequent asthma emergency room visits, her medications may require some adjustment."  *Id.*.

### D. Susan Santarpia, Ph.D., Psychologist

On April 3, 2014, Dr. Santarpia saw Ramirez for a consultative examination.  Tr. 246-49.  Dr. Santapria diagnosed Ramirez with "adjustment disorder with depressed mood, controlled when properly medicated."  Tr. 249.  Dr. Santarpia said that Ramirez

> presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make

4

appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. Mild impairment is demonstrated in performing complex tasks independently. Difficulties are caused by lack of motivation.

The results of the present evaluation appear to be consistent with stress related problems, but in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

Tr. 248-49.

## III. THE ALJ'S DECISION

In denying Ramirez's application, the ALJ evaluated Ramirez's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic

assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. See 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. See *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Ramirez had "not engaged in substantial gainful activity since December 5, 2013, the application date." Tr. 24. At step two, the ALJ found that Ramirez had the following severe impairments: "major depressive disorder; anxiety; diabetes; obesity; asthma; polyarthralgia; and degenerative disc disease of the lumbar spine." *Id*. At step three, the ALJ determined that Ramirez did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25.

6

In assessing Ramirez's RFC, the ALJ determined that Ramirez could perform light work as defined in 20 C.F.R. § 416.967(b), but with the following conditions:

> [S]he can sit for up to 6 hours in an 8 hour day and can stand or walk up to 6 hours in an 8 hour day. She can occasionally climb ramps or stairs, can never climb ladders, ropes, or scaffolds, can occasionally balance, stoop, kneel, and crouch, and can never crawl. She can frequently handle and finger objects bilaterally. Communication in English is not required. She can never face exposure to excessive heat, excessive moisture, excessive humidity, or irritants, such as odors, fumes, dust, gases, and poor ventilation. She is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days. She can have frequent interaction with the public and occasional interaction with coworkers.

Tr. 27.

At step four, the ALJ determined that Ramirez has no past relevant work. Tr. 32. At step five, the ALJ determined that the Commissioner sustained her burden of establishing that Ramirez had the RFC to perform "jobs that exist in significant numbers in the national economy." Tr. 32. Specifically, the ALJ determined that Ramirez could work as a cleaner, as a "picking table worker," or as a "launder folder." *Id*.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [Social Security Administration ("SSA")] applied the correct legal principles in making the determination." *Id*. This includes ensuring that the court is "satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). Then, the court "decide[s] whether the determination is supported by

7

'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Ramirez argues that the ALJ erred in his evaluation of her treating physician's opinion. Docket Item 11-1 at 16-24. Specifically, she argues that the ALJ failed to give appropriate weight to the medical opinion of Dr. Slater. *Id.*

SSA regulations provide that a treating physician's opinion is given controlling weight so long as (1) it "is well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques," and (2) it "is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). "[E]ven when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). "To override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the

8

consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). Furthermore, "[a] physician's opinions are given less weight when his opinions are internally inconsistent." *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (summary order). "After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Greek*, 802 F.3d at 375 (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

Based upon this Court's review of the record, the ALJ did not err in assigning "little weight" to Dr. Slater's opinion. His stated reasons for doing so adequately "'build an accurate and logical bridge from th[e] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

The ALJ's opinion indicates that he reviewed Dr. Slater's treatment notes to determine whether the underlying medical evidence supports Dr. Slater's opinions. *See* Tr. 31. In fact, the ALJ identified specific notes from Dr. Slater's office that appear to contradict the extent of what Dr. Slater opined were Ramirez's disabilities—such as notes indicating that Ramirez has a "full range of motion" and "normal strength." *Id.*; *see, e.g.,* Tr. 335, 340, 345. And even though Dr. Slater's opinions about Ramirez's physical limitations were "due to pain," Tr. 316, and "due to [Ramirez's] chronic pain," Tr. 317, the ALJ explained, and cited evidence from the record indicating, that Ramirez's "pain may not be as severe as alleged," Tr. 28 (citing, *e.g.,* Tr. 335 (Ramirez

9

in "[n]o acute distress")).[1]  The ALJ also indicated that Dr. Slater's opinion on the length of time that Ramirez is able to stand, Tr. 316 ("cannot stand . . . for *six to eight hours*") (emphasis added), may conflict with NP Wilson's opinion that Ramirez can stand for up to six hours in a workday, Tr. 31 (citing Tr. 240 (can stand or walk "*up to 6 hours* per day") (emphasis added)), and he took both opinions into account when formulating Ramirez's RFC.  See Tr. 26-27.  In fact, his conclusion that Ramirez can stand for no more than six hours may well be the only way to reconcile the opinions of Dr. Slater and his nurse practitioner.

What is more, even if the ALJ erred in evaluating the weight assigned to Dr. Slater's opinion, any error would have been harmless.  In the social security context, "where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate."  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011)).  In this case, although Dr. Slater explained that Ramierez cannot continue or resume work at her current or previous employment "due to her chronic pain and asthma," he also explicitly opined that there may be other work Ramierez could do given her skills and disability or impairment.  Tr. 317.  Although the ALJ determined that Ramierez did not have any past relevant work, Tr. 32., the ALJ's ultimate conclusion that "there are jobs that exist in significant

---

[1] Indeed, although Ramirez indicated that she was in some degree of generalized pain at some visits to Dr. Slater's office, *see, e.g.*, Tr. 241 (May 2014 visit where pain was rated highest possible); Tr. 346 (June 2014 visit where pain was rated 8 of 10), at other visits, treatment and progress notes indicate that Ramirez's chronic pain issues were "[r]esolved."  *See, e.g.*, Tr. 339, 359.

10

numbers in the national economy that the claimant can perform," *id.*, is consistent with

Dr. Slater's explicit determination that there might be work that Ramirez can do.[2]

It is true that the ALJ did not explicitly address "the frequency, length, nature, and extent of [Dr. Slater's] treatment" of Ramirez before assigning his opinion little weight, *see Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418), but "[i]t has never been expected that an organization so vast as the Social Security Administration can achieve absolute procedural perfection." *Mercer v. Birchman*, 700 F.2d 828, 835 (2d Cir. 1983). It might be that if this Court were to consider the ALJ's opinion de novo, it would disagree with his conclusion. But the Act requires the Commissioner, not this Court, to determine whether Ramirez is disabled.

Ramirez briefly mentions several other reasons why she believes the ALJ committed legal error, including "improperly rely[ing] on the opinions of Dr. Balderman and" NP Wilson, Docket Item 11-1 at 22-23, none of which merit substantial discussion. Again, "[i]t is for the SSA, and not this [C]ourt, to weigh the conflicting evidence in the record." *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). Because this Court can follow the ALJ's logical reasoning, because—even though sometimes more "boilerplate" than this Court would

---

[2] Dr. Slater's opinion that there may be work that Ramirez could do despite her impairments, Tr. 317, appears to be inconsistent with his earlier assessment that she "cannot work," Tr. 314. Because both assessments were made on the same day, that appears to be an internal inconsistency, a good reason to give Dr. Slater's opinion less weight. *See Micheli*, 501 F. App'x at 28. In addition, Dr. Slater's more specific judgment—that although Ramirez cannot perform prior work she might be able to do some other work—supports the ALJ's conclusion. And, in any event, a physician's opinion about whether or not a claimant "meet[s] the statutory definition of disability" is not itself entitled to deference because that is a judgment left to the Commissioner. 20 C.F.R. § 416.927(d).

11

prefer—the ALJ nonetheless adequately explained the reasons for his weighing of all the medical opinions in the record, and because his decision is supported by substantial evidence, remand would be inappropriate.[3]

## **CONCLUSION**

The ALJ's decision was neither contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, for the reasons stated above, Ramirez's motion for judgment on the pleadings, Docket Item 11, is DENIED, the Commissioner's cross motion for judgment on the pleadings, Docket Item 15, is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: May 28, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[3] Ramirez also argues that the ALJ failed to develop the record.  Docket Item 11-1 at 26.  But this Court sees no clear gaps in the record that the ALJ needed to address, and Ramirez's brief does not clearly point to one.  The ALJ "was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  And the RFC accounted for the evidence and opinions in the record.